**Debra DEURLOO, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 34A05–9704–CR–125.

Court of Appeals of Indiana.

Jan. 27, 1998.

William C. Menges, Jr., Howard County Public Defender, Kokomo, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

BARTEAU, Judge.

Debra Deurloo was convicted of public indecency, a Class A misdemeanor, following a bench trial. Deurloo challenges her conviction and raises the sole issue of whether she was deprived of her Fourteenth Amendment right to procedural due process when she was summarily terminated from the prosecutor's pretrial diversion program without adequate notice or an opportunity for a hearing before the court. We affirm.

### FACTS

The relevant facts are as follows: on November 6, 1995, the State of Indiana charged Deurloo with public indecency, a Class A misdemeanor, pursuant to a report that Deurloo had "mooned" her neighbor and several other people from the driveway of her home. Deurloo waived her initial hearing, and on February 7, 1996, she entered into a Pretrial Diversion Agreement with the State, which provided that "pursuant to I.C. 33–14–1–7, ... [t]he State agrees to withhold prosecution of the charges herein so long as the Defendant complies with the terms of this Agreement," followed by several provisions to which Deurloo agreed, including that she would commit no criminal offenses for the twelve month duration of the agreement, that she would pay certain fees and costs, and that she would refrain from harassing, intimidating or threatening Christina Tranbarger, the complaining witness. R. 15–16.

On September 13, 1996, the State of Indiana filed a "Notice of Termination from Pretrial Diversion and Request for Pretrial Conference Setting," notifying the court "of its intention to terminate [Deurloo] from the Prosecutor's Pretrial Diversion Program, effective immediately, for the reason that [Deurloo] has violated term(s) of the written Pretrial Diversion Agreement." R. 21.

Deurloo received a copy of this notice and a summons ordering her to appear in court on October 16, 1996, on which date an initial hearing was conducted on the public indecency charge.

Deurloo then moved for an evidentiary hearing on the termination, based upon the fact that she was not given notice of which term(s) of the Pretrial Diversion Agreement she had allegedly violated, nor had a hearing been held to determine if she had, in fact, violated any such term(s) justifying her termination from the program. The trial court denied her motion, finding that "the [court] has no responsibility or authority over the Prosecutor's pre-trial diversion program. For the [court] to exercise control over the acceptance, rejection or termination would be an improper entry into prosecutorial discretion." R. 34. Deurloo was subsequently tried and convicted of the charge and sentenced to one year incarceration, which was suspended. She was placed on unsupervised probation for one year.

Deurloo now challenges her conviction on the basis that she was denied due process when she was not given adequate notice or afforded a hearing prior to her termination from the pretrial diversion program.

### DISCUSSION

Indiana Code section 33–14–1–7(a) provides that:

> A prosecuting attorney may withhold prosecution against an accused person if:
>
> (1) the person is charged with a misdemeanor;
>
> (2) the person agrees to conditions of a pretrial diversion program offered by the prosecuting attorney; and

> (3) the terms of the agreement are recorded in an instrument signed by the person and the prosecuting attorney and filed in the court in which the charge is pending.

The remainder of section 33–14–1–7 includes several conditions which may be imposed as part of the agreement to withhold prosecution and certain administrative requirements, such as the deposit of user's fees and victim notification. Aside from the few details outlined in the statute, the organization and administration of a pretrial diversion program is left entirely to the prosecutor.[1]

A prosecutor is vested with broad discretion in the performance of his duties. *Burst v. State*, 499 N.E.2d 1140, 1147 (Ind. Ct.App.1986). The determination of whom to prosecute is within the sole discretion of the prosecutor, and the court may not substitute its discretion for that of the prosecutor. *Johnson v. State*, 675 N.E.2d 678, 683 (Ind. 1996). Similarly, this statute grants the prosecutor discretion to withhold formal prosecution in appropriate cases to afford the defendant an opportunity to successfully complete an alternative course of action.[2]

Deurloo argues that the prosecutor's discretion in administering a pretrial diversion program is restrained by principles of due process which require, at a minimum, notice of the alleged violation and a hearing at which the court is to determine whether there was in fact a violation before a defendant is terminated from the program and criminal proceedings are resumed. This is an issue of first impression in Indiana.

Whether an individual is entitled to procedural due process is dependent upon whether

1. Several other states which have pretrial diversion programs specifically provide in their statutes for judicial involvement, either in supervising the program or reviewing the placement and termination decisions of the supervisory body. *See* Cal.Penal Code § 1001.4 (providing that a defendant is entitled to a hearing before his participation in the pretrial diversion program can be terminated); Ga.Code Ann. § 42–8–81 (providing that the court may, upon application of the defendant, release him to the supervision of a pretrial diversion program); Tenn.Code Ann. § 40–15–101 (providing that a defendant can petition the court for review of the prosecutor's decision not to accept him into the pretrial diver-

sion program). The specificity of the statutes in other states convinces us that the protections afforded defendants in those states prior to termination from a pretrial diversion program are statutory rather than constitutional.

2. Prior to section 33–14–1–7 being enacted in 1982, this court reviewed an alcohol deferred prosecution program established by the Vanderburgh County Prosecutor's Office and held that, absent statutory authority for such a program as an alternative to prosecution, the prosecutor was acting beyond the scope of his authority by offering the program. *Brune v. Marshall*, 169 Ind. App. 637, 640, 350 N.E.2d 661, 663 (1976).

she is being deprived of a property or liberty interest. *Bd. of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Hopper v. State,* 546 N.E.2d 106, 108 (Ind.Ct.App.1989). When one of these protected interests is implicated, the right to a hearing is paramount. *Roth,* 408 U.S. at 569–70, 92 S.Ct. at 2705. Accordingly, the Supreme Court has held that before the conditional liberty of an individual released on parole or probation can be terminated for violating a condition of release, he is entitled to written notice of the claimed violation, disclosure of evidence, a hearing before a neutral and detached hearing body, an opportunity to present witnesses and other evidence, the right to confront and cross-examine witnesses against him, and a written statement describing the evidence relied upon for the action taken. *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656 (1973) (applying due process requirements to probation revocation proceedings); *Morrissey v. Brewer,* 408 U.S. 471, 482, 489, 92 S.Ct. 2593, 2600–01, 2604, 33 L.Ed.2d 484 (1972) (applying due process requirements to parole revocation proceedings).

In *Hopper,* the defendant requested treatment pursuant to Indiana Code section 16–13–6.1–16 (now section 12–23–6–1), which allows an individual to be placed in a drug or alcohol treatment program under the supervision of the department of mental health in certain circumstances and have the entry of judgment of conviction against him deferred pending the outcome of treatment.[3] The defendant pled guilty to a charge of burglary in exchange for a five-year sentence, but sentencing was held in abeyance and the defendant was placed in a treatment program. The defendant subsequently left the program before treatment was complete and the trial court resumed jurisdiction and sentenced him pursuant to the plea agreement. Applying the *Gagnon* and *Morrissey* lines of reasoning, this court held that "[b]ecause a defendant may suffer the loss of his liberty by having judgment entered and by being sub-

sequently sentenced upon the termination of treatment under the statutory scheme, . . . [the defendant] has a protected liberty interest such that he or she must be accorded procedural due process before the court may terminate the treatment and resume criminal proceedings." *Hopper,* 546 N.E.2d at 108–09. In determining what process is due, the court agreed with the defendant that "his status under treatment is akin to a defendant's situation on probation or parole." *Id.* at 109.

Deurloo relies on *Hopper, Gagnon,* and *Morrissey* to support the proposition that section 33–14–1–7 creates a right to be free from prosecution and that she therefore had a protected liberty interest in remaining in the pretrial diversion program and was entitled to procedural due process prior to termination from the program. She compares her situation to that of the defendant in each of those cases. The defendants in *Hopper, Gagnon,* and *Morrissey,* however, had already been subjected to the full criminal process, had entered an admission of guilt pursuant to a plea agreement or had been found guilty following a trial and had been sentenced by the court. Their subsequent release was pursuant to a specific statute providing for parole, probation, or treatment, and was approved by the court. Each defendant remained under the supervision of the court and knew that his continued liberty depended upon compliance with the conditions placed upon his release.

■ Deurloo's status as a pretrial divertee differs from that of a parolee, a probationer, or an individual in rehabilitative treatment in one crucial respect: she had not yet come before the court to answer the charge against her prior to her entry into the pretrial diversion program and was not under court supervision. The consequence of her termination from the program was not that a suspended or deferred sentence would be imposed upon her by the court, depriving her of her liberty, but only that she would be

---

**3.** The court in *Brune* compared this statute to the Vanderburgh County deferred prosecution program and concluded that the treatment in lieu of prosecution program had two key differences: "[f]irst, it is properly created by the legislature; and second, it is administered by the judge of a

court of competent jurisdiction." 169 Ind.App. at 641, 350 N.E.2d at 663. Although the first distinction made by the *Brune* court is no longer applicable since deferred prosecution programs have been statutorily authorized, the second distinction remains between the two programs.

required to re-enter the formal criminal process. In the course of the subsequent prosecution, she was afforded all the rights to which a criminal defendant is entitled, and still could have been found not guilty of the charge at trial. The fact that she had been terminated from the pretrial diversion program in no way impacted the subsequent criminal proceedings.

Deurloo's liberty interest was not directly at stake as a result of the prosecutor's decision to terminate her from the program. As Deurloo did not have a protected liberty interest in remaining in the pretrial diversion program, she was not entitled to a due process hearing prior to her termination from the program. The trial court did not err in denying her request for such a hearing. Accordingly, her conviction is affirmed.

SHARPNACK, C.J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

Deurloo did not seek an interlocutory appeal from the trial court's denial of her claim of entitlement to notice and an opportunity to be heard with respect to violation of the pretrial diversion agreement. Had she done so, I would have held that, in the absence of such notice and opportunity to be heard, prosecution upon the public indecency charge should not have gone forward.

A pre-trial diversion agreement is required to be filed with the court. I.C. 33–14–1–7(a)(3); furthermore, the statute speaks in terms of "if the *court* withholds prosecution" under Section 7. It is clear, therefore, that the court is not merely a disinterested bystander with regard to the diversion agreement.[4] For this reason, I would hold that the trial court was mistaken in its conclusion that it totally lacked responsibility or authority with regard to the agreement or with

respect to whether any of the conditions of the agreement had been violated.

The pre-trial diversion agreement program is somewhat analogous to the program for treatment of drug abusers and alcoholics as an alternative to prosecution. See I.C. 12–23–6–1 et. seq. With regard to the latter program, this court has held that termination may not be arbitrary and requires "certain minimal due process protection". *Hopper v. State* (1989) Ind.App., 546 N.E.2d 106, *trans. denied.*[5] To be sure, *Hopper* involved post-conviction rather than pre-trial treatment. But the statutory drug and alcohol treatment program is applicable to both pre-trial and post-conviction situations. I see no basis upon which to afford notice and opportunity to be heard in one such setting but not in the other.

Accordingly, I would hold that, at a minimum, Deurloo was entitled to notice and an opportunity to be heard with respect to the State's allegation that she had violated a condition or conditions of the agreement.

Here, however, the prosecution followed termination of the agreement and, as noted by the majority, Deurloo does not claim that such termination resulted in any denial of due process at the trial stage nor that her conviction is otherwise tainted. For this reason I too vote to affirm the conviction.

---

4. The majority alludes to the statutes of other jurisdictions which provide for "judicial involvement" in their pre-trial diversion programs. The majority does not find such implication in our statute, notwithstanding that the agreement must be filed with the court and notwithstanding that conditions, other than those specifically enumerated in the statute, may be made a part of the agreement "if approved by the court". I.C. 33–14–1–7(c).

5. To be sure, the trial court's active involvement in the drug and alcohol abuse program is more pronounced and clear than in the pre-trial diversion program. *See* I.C. 12–23–7–8. Therefore, although the prosecutorial discretion present with respect to both programs is entitled to great deference, such deference does not justify the court ignoring an arbitrary or capricious termination of the treatment or diversion.