FILED

Nov 13 2019, 11:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Caroline B. Briggs
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Schenke,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 13, 2019

Court of Appeals Case No.
19A-CR-733

Appeal from the Tippecanoe
Superior Court

The Honorable Michael A.
Morrissey, Judge

Trial Court Cause No.
79D06-1611-CM-4319

**Baker, Judge.**

[1] James Schenke appeals following his conviction for Class A Misdemeanor Invasion of Privacy.[1]  Schenke argues that the trial court erred by revoking his pretrial diversion agreement without a hearing and that he was denied the right to legal representation at his trial.[2]  Finding no error with respect to the pretrial diversion agreement but also finding that Schenke was denied the right to legal representation, we affirm in part, reverse in part, and remand for a new trial.

## Facts

[2] On October 28, 2016, Schenke was arrested for battering his wife ("Wife"). Upon his release from jail, Schenke signed a ten-day no contact order listing Wife as the protected person; among other things, he was prohibited from having any direct or indirect contact with her and from being within eyesight of her home.

[3] On October 29, 2016, Schenke and a friend went to Wife's neighborhood. Schenke sent his friend into Wife's home with a key and a list of items to retrieve; Schenke waited on the corner and directed his friend on the phone. While this was occurring, Tippecanoe County Sheriff's Detective Jodi Rohler was dispatched to the scene.  She talked to Schenke's friend at Wife's home and

---

[1] Ind. Code § 35-46-1-15.1.

[2] Schenke also argues that there is insufficient evidence supporting the conviction, but because we are remanding for a new trial, we will not address this issue.

to Schenke on the corner. Detective Rohler could see Wife's home from the intersection where Schenke was standing.

[4] On November 30, 2016, the State charged Schenke with two counts of Class A misdemeanor invasion of privacy. It later added four more counts of the same offense.

[5] On December 14, 2017, the State agreed to withhold prosecution for one year in a pretrial diversion agreement. Among other things, the agreement required Schenke to attend, complete, and pay for the Character Restoration Program within six months. On December 20, 2018, the State petitioned to revoke the pretrial diversion agreement because Schenke had not yet completed the Character Restoration Program.

[6] Thereafter, the State resumed prosecution and asked that a bench trial be scheduled; the trial court granted the motion and scheduled the trial. On February 21, 2019, Schenke filed a motion for indigent counsel. The trial court held a hearing on February 26, 2019, but Schenke failed to appear, so the court denied his motion and required that he proceed pro se.

[7] On March 4, 2019, the State dismissed all but one count of invasion of privacy. Following a March 5, 2019, bench trial, the trial court found Schenke guilty and sentenced him to one year of probation. Schenke now appeals.

# Discussion and Decision

## I. Pretrial Diversion

[8] Schenke first argues that the trial court erred by failing to set a hearing on the State's decision to terminate his participation in the pretrial diversion program.

[9] Indiana Code section 33-39-1-8 governs pretrial diversion agreements, allowing prosecutors to withhold prosecution for a misdemeanor if certain conditions are met. The statute is permissive but not prescriptive, as it does not prescribe a revocation procedure. Consequently, it neither divests the prosecutor's "broad discretion in the performance of his duties" nor amends the general rule that the "determination of whom to prosecute is within the sole discretion of the prosecutor." *Deurloo v. State*, 690 N.E.2d 1210, 1211 (Ind. Ct. App. 1998). Instead, the statute simply "grants the prosecutor discretion to withhold formal prosecution in appropriate cases to afford the defendant an opportunity to successfully complete an alternative course of action." *Id.* In other words, the statute does not give a defendant the right to a hearing if the prosecutor decides to revoke the pretrial diversion agreement.

[10] Furthermore, Schenke did not have a right to a hearing under the Due Process Clause. A person is only entitled to procedural due process if he is being deprived of a property or liberty interest. *Id.* at 1212. The revocation of a pretrial diversion agreement does not mean "that a suspended or deferred sentence would be imposed upon [the defendant] by the court, depriving [him] of [his] liberty, but only that [he] would be required to re-enter the formal

criminal process." *Id.* at 1212-13. The revocation "in no way impacted the subsequent criminal proceedings." *Id.* at 1213. Because a defendant's "liberty interest [is] not directly at stake as a result of the prosecutor's decision to terminate [him] from the program," Schenke "was not entitled to a due process hearing prior to [his] termination from the program." *Id.*

[11] Schenke has neither a statutory nor a constitutional right to a hearing on the State's decision to terminate the pretrial diversion agreement. Therefore, the trial court here did not err by failing to hold a hearing on the State's petition to revoke that agreement.[3]

## II. Legal Representation

[12] Next, Schenke argues that he was denied the right to counsel at his bench trial. The State concedes this issue and agrees that a new trial should be held.[4]

[13] Our Supreme Court has explained the fundamental right to legal representation as follows:

> The rights embodied in the Sixth Amendment protect the fundamental right to a fair trial. "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. Cronic,* 466 U.S. 648, 654,

---

[3] Schenke also argues that he was denied the right to legal representation on this issue, but because he was not entitled to a hearing at all, he was also not entitled to an attorney at that hearing.

[4] We applaud the State for conceding this issue, given that the violation of Schenke's constitutional right to counsel in this case was blatant and impossible to defend.

104 S.Ct. 2039, 2044, 80 L.Ed.2d 657, 664 (1984). In recognition that the "average defendant does not have the professional legal skills to protect himself" at trial, it is required that a defendant's choice to appear without professional counsel be made intelligently. *Johnson v. Zerbst,* 304 U.S. 458, 462-64, 58 S.Ct. 1019, 1022-23, 82 L.Ed. 1461, 1465-66 (1938).

When a defendant asserts the right to self-representation, the court should tell the defendant of the "dangers and disadvantages of self-representation." *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562, 581-82 (1975). There are no prescribed "talking points" the court is required to include in its advisement to the defendant; it need only come to a considered determination that the defendant is making a voluntary, knowing, and intelligent waiver. This determination must be made with the awareness that the law indulges every reasonable presumption against a waiver of this fundamental right.

*Poynter v. State*, 749 N.E.2d 1122, 1125-26 (Ind. 2001) (some internal citations and an internal footnote omitted).

[14] Here, there is no evidence that Schenke voluntarily, knowingly, and intelligently waived his right to counsel. In fact, there is evidence of precisely the opposite. It appears that while Schenke originally had a public defender, that attorney withdrew from the case after the State agreed to allow Schenke to participate in the pretrial diversion program. On February 7, 2018, Schenke filed a pro se motion to reinstate a public defender to his case while the pretrial diversion agreement was still in place. Following a hearing, the trial court denied the motion.

[15]     After the State revoked the pretrial diversion agreement and moved to set a bench trial, Schenke again requested the appointment of counsel on February 21, 2019. In the motion, he stated that his "financial wherewithal is no [] better and actually worse than it was when indigent defense was assigned." Appellant's Supp. App. Vol. II p. 2. The next day (a Friday), the trial court scheduled Schenke's motion for a hearing on February 26, 2019 (the following Tuesday). All orders were mailed to Schenke, and he claims that he did not receive this order and was unaware of the hearing. He did not appear at that hearing, and the trial court summarily denied his motion and reaffirmed that the bench trial would take place on March 5, 2019. Tr. Vol. II p. 4.

[16]     On March 4, 2019, Schenke requested a continuance, informed the trial court that he had not known about the hearing, and again requested counsel, advising the trial court that he did not have the expertise to summon and prepare witnesses. The trial court denied the motion.

[17]     At the March 5, 2019, bench trial, the trial court noted that it had summarily denied Schenke's motion for the appointment of counsel because he failed to appear at the hearing. Throughout the trial, Schenke repeatedly noted that he did not want to represent himself and requested guidance from the trial court:

> Court:       . . . Mr. Schenke, do you want to make an opening statement?
>
> Schenke:    *I know you're not necessarily allowed to give legal advice, but I didn't expect to be representing myself. Is something I say as my pro se counsel—*

Court: Uh huh.

Schenke: —held in the same regard as—if someone wants to call me to the stand today, there's a high likelihood based on that—

Court: I don't know.

Schenke: —that I would call—I would take the Fifth.

***

Court: You have the right to take the Fifth if you're called. I don't contemplate that you're going to be called as a witness, but we'll deal with that if and—

Schenke: With me making an opening statement separate than me presenting—being at—being a witness (indiscernible).

Court: Well, no. Opening statement is when you're going to stand up and tell me—kind of map out your evidence that's going to show that you're not guilty of invasion of privacy.

Schenke: Right.

Tr. Vol. II p. 39-40 (emphasis added); *see also id.* at 79-81 (lengthy discussion between trial court and Schenke to help Schenke understand his Fifth Amendment rights), 84 (after the trial court told Schenke he was seeking inadmissible testimony and he apologized, trial court said, "That's okay.

You're not a lawyer" and Schenke responded "I don't really know much"), 102-03 (trial court answers many of Schenke's questions about the order of evidence to which Schenke apologizes, "I'm sorry.  I'm just not a lawyer."), 117 (after a discussion about closing arguments, Schenke tells the trial court, "I'm not saying you're doing it wrong.  I just don't know what's going on here.").

[18]  The trial court never engaged in a discussion with Schenke about the perils of self-representation, nor did it conduct an inquiry as to Schenke's indigency. Instead, it repeatedly ignored his requests for counsel and ignored the many red flags indicating that Schenke was out of his depth and needed (and wanted) an attorney.  Under these circumstances, we agree with the State that Schenke did not knowingly, voluntarily, and intelligently waive his right to counsel—he did not waive his right to counsel *at all*.  Therefore, we reverse and remand for a new trial.

[19]  The judgment of the trial court is affirmed in part, reversed in part, and remanded for a new trial.

Kirsch, J., and Crone, J., concur.